**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 11-cv-00555-REB-KLM

ELLIOT B. MAISEL,

      Plaintiff,

v.

ERICKSON CONSTRUCTION, INC., a Colorado corporation,
RICKIE DEAN ERICKSON, individually,
CHARLES L. CUNNIFFE, individually, d/b/a Charles Cunniffe & Assoc, Architects,
ALPINE HEATING AND SHEET METAL, INC., a Colorado corporation,
COG PLUMBING & HEATING, INC., a Colorado corporation, and
THE LOG CONNECTION, INC., a Colorado corporation,

      Defendants.

ERICKSON CONSTRUCTION, INC., a Colorado corporation,
RICKIE DEAN ERICKSON, individually,

      Cross-Claimants/Third-Party Plaintiffs.

CHARLES L. CUNNIFFE, individually, d/b/a Charles Cunniffe & Assoc., Architects,
THE LOG CONNECTION, INC., a Colorado corporation,
DAVID JOHNS, individually, d/b/a Johns Construction,
CROSS SEVEN, INC., a Colorado corporation,
LOGARYTHMS, INC., a Colorado corporation,
STEAMBOAT LANDSCAPING, INC., d/b/a Mountain West Environments, Inc., a
Colorado corporation,
TBW, INC., a Colorado corporation, and
TINMAN ROOFING AND HOME IMPROVEMENTS, INC., a Colorado corporation

Cross-Claimants/Third-Party Defendants.

_____

**ORDER RE: CROSS-CLAIM DEFENDANT CHARLES L.**
**CUNNIFFE'S MOTION TO DISMISS CROSS-CLAIMS**
_____

**Blackburn, J.**

The matter before me is **Cross-Claim Defendant Charles L. Cunniffe's Motion To Dismiss Cross-Claims** [#119][1], filed October 20, 2011.  I grant the motion in part and deny it in part.

## I.  JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Pursuant to the dictates of *Twombly*, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  "This

---

[1]  "[#119]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

pleading requirement serves two purposes:  to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming*, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted).  *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. *See also Ridge at Red Hawk*, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Kansas*

*Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 127 S.Ct. at 1965). The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1248. Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950; *see also Kansas Penn Gaming*, 656 F.3d at 1215. Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. ANALYSIS

In January, 2003, plaintiff entered into a written contract with defendant/third-party defendant, Charles L. Cunniffe, d/b/a Charles Cunniffe & Assoc. Architects ("CCA") to provide architectural services for the construction of a residential home in Steamboat Springs, Colorado. After CCA began its work, plaintiff entered into a separate agreement with defendants/cross-claim plaintiffs/third-party plaintiffs, Rickie Dean Erickson and Erickson Construction, Inc. (collectively, "Erickson"), to provide construction and general contractor services in connection with the construction. Importantly, although Erickson was required to construct the residence according to the

4

plans and specifications provided by CCA, there was no contract between Erickson and CCA.

Plaintiff alleges various defects and deficiencies in the design and construction of the home and asserts claims for breach of contract, breach of implied warranties, negligence, and vicarious liability against Erickson, CCA, and numerous other contractors and subcontractors involved in the construction.  The instant motion is directed to Erickson's cross-claims against CCA for negligence, breach of contract, indemnification, and contribution.  I examine the issues raised by and inherent to the motion *seriatim*.

CCA argues that Erickson's claim of negligence is barred by the economic loss rule.  This rule prevents a party from recovering in tort for a mere breach of contract. ***Town of Alma v. Azco Const., Inc.,*** 10 P.3d 1256, 1264 (Colo. 2000).  That is, the failure to perform a contract generally does not give rise to liability in tort, unless there exist duties independent of the contract.  ***Id.***  The economic loss rule thus maintains the boundary between contract law and tort law.  ***Id.*** at 1259.  More specifically, and more relevantly for present purposes, the Colorado Supreme Court has held, in circumstances closely analogous to those of this case, that the economic loss rule operates even in the absence of a direct contract between the parties.

In ***BRW, Inc. v. Dufficy & Sons, Inc.,*** 99 P.3d 66 (Colo. 2004), the City and County of Denver contracted with BRW, Inc. ("BRW") to plan, design, and oversee construction of two steel bridges on Speer Boulevard over the Platte River in Denver. ***Id.*** at 68.  The defendant, Dufficy & Sons, Inc. ("Dufficy") was subcontracted for the

fabrication, painting, and shipment of structural steel for the project, and it in turn

subcontracted with another entity to supply paint and apply topcoat and a primer to the

bridges.  *Id.*  Dufficy had no direct contract with BRW, however.  Dufficy suffered

damages due to unexpected delays relating to the application of the primer and top

coat, and sought to recover against, *inter alia*, BRW.  *Id.* at 69-70.  BRW moved to

dismiss the action, arguing that the economic loss rule barred Dufficy's negligence and

negligent misrepresentation claims, and Dufficy countered that the rule was inapplicable

in the absence of a contract between it and BRW.  *Id.* at 72.

The Colorado Supreme Court disagreed and held that the economic loss rule

applies not only to a direct, two-party contract but also within the context of a network of

interrelated construction contracts.  *Id.* at 72-73.  Noting that the primary purpose of the

economic loss rule is to encourage commercial parties to "reliably allocate risks and

costs during their bargaining," the Court found that these same policy considerations

applied with equal force to a network of related contracts:

> In such a contract chain, the parties do have the opportunity
> to bargain and define their rights and remedies, or to decline
> to enter into the contractual relationship if they are not
> satisfied with it.  Even though a subcontractor may not have
> the opportunity to directly negotiate with the engineer or
> architect, it has the opportunity to allocate the risks of
> following specified design plans when it enters into a
> contract with a party involved in the network of contracts.  In
> this situation, application of the economic loss rule
> encourages a subcontractor to protect itself from risks, holds
> the parties to the terms of their bargain, enforces their
> expectancy interests, and maintains the boundary between
> contract and tort law.
>
> The policies underlying the application of the economic loss
> rule to commercial parties are unaffected by the absence of

> a one-to-one contract relationship.  Contractual duties arise
> just as surely from networks of interrelated contracts as from
> two-party agreements.

*Id.* at 72.  Concluding that BRW's duties of care were set forth in the contracts governing the project, the Court held that Dufficy's overlapping tort claims were barred by the economic loss rule.  *Id.* at 74-75.

So it is in this case.  Although Erickson had no direct contract with CCA, the construction project clearly was governed by a network of interrelated contracts. Erickson cannot have been unaware that it would be building a house based on CCA's design plans when it contracted with plaintiff.  *See id*. at 68.  It had the opportunity in that context to allocate the risks inherent in that arrangement.  The fact that it did not do so does not bar application of the economic loss rule.[2]

Erickson attempts to distinguish *BRW, Inc.* by seizing on dicta referring to the parties as "commerically sophisticated."  *Id.* at 72.  There are at least two problems with this argument.  First, the purported sophistication of the parties *vel non* was clearly not central to the Court's holding.  The reference itself was unique, as throughout the remainder of the opinion, the Court referred more generally to "commercial parties." *See id.* at 71, 72.  Nothing in the opinion indicates that the Court quantified or even examined the "sophistication" of the various parties or made sophistication a prerequisite to application of the rule announced therein.

---

[2] Erickson argues that there is no allegation that it had a written contract with *any* of the parties involved in the construction.  Plaintiff's complaint, however, plainly alleges at least that he had a contract with Erickson.

Second, and assuming *arguendo* that commercial sophistication were a prerequisite, the record before me, and Erickson's pleading in particular, indicates a series of relationships between and among a number of commercial entities that facially appears complex and sophisticated.  The fact that Erickson was in the regular business of building homes, that it knew it would be building according to another party's specifications, and that it engaged the services of a variety of subcontractors to assist in the work implies a more than sufficient level of commercial sophistication to the extent such is required.

Because the duties on which Erickson bases its negligence claim are identical to the ones on which it relies for its breach of contract claim, the economic loss rule forecloses recovery in tort.  *See Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009).  I therefore find and conclude that the cross-claim for negligence as against CCA must be dismissed.

Erickson also has alleged a breach of contract claim.  As there is no direct contract between Erickson and CCA, Erickson premises this claim on the contract between CCA and plaintiff, arguing that it is a third-party beneficiary of that contract.  Erickson may be a third-party beneficiary "if the parties to the agreement intended to benefit the non-party," and "provided that the benefit claim is a direct and not merely an incidental benefit of the contract." *Jefferson County School District No. R-1 v. Shorey*, 826 P.2d 830, 843 (Colo.1992) (citation and internal quotation marks omitted).

Neither of these conditions is satisfied here.  Section 9.7 of CCA's contract with plaintiff provides that "[n]othing contained in this Agreement shall create a contractual

8

relationship with or a cause of action in favor of a third party against either the Owner or Architect." (*See* **Am. Compl. App.**, ¶ 9.7at 12.) Erickson's suggestion that it is not the type of third-party contemplated by section 9.7 because the contract contemplates the existence of and makes various references to the "Contractor" is unconvincing. Given the unequivocal language of section 9.7, these references must be seen as merely acknowledgments that such person would be involved in the project. They do not undermine the parties' clear intent not to confer any benefit, direct or otherwise, on that person or any other third-party.[3] Accordingly, Erickson's cross-claim for breach of contract against CCA must be dismissed.

Erickson also has asserted a claim for indemnification. *See **Brochner v. Western Insurance Co.***, 724 P.2d 1293, 1295 (Colo. 1986). In Colorado, however, the common law doctrine of indemnity has largely been supplanted by the doctrine of proportionate fault. ***See id.*** at 1299. While certain narrow exceptions survive, *see **Johnson Realty v. Bender,*** 39 P.3d 1215, 1218 (Colo. App. 2001), they are inapplicable here, *a fortiori*, in light of my conclusion that Erickson was not a third-party beneficiary to the CCA contract. This claim therefore also will be dismissed as against CCA.

Finally, CCA seeks to dismiss Erickson's claim for contribution. Colorado law provides a right of contribution "where two or more persons become jointly or severally

---

[3] Erickson apparently believes that it can be a "non-party" beneficiary that is not necessarily a third-party beneficiary. This is a semantical distinction on the order of logomachy with no legally operative significance as far as this court can discern. Moreover, the argument contradicts Erickson's own pleadings, which specifically identify it as a third-party beneficiary of the contract. (*See* **Cross-Claims and Third-Party Claims** ¶ 32 at 7 [#106], filed September 30, 2011.)

liable in tort for the same injury to person or property." §13-50.5-102, C.R.S.  Focusing

on the "same injury" requirement, CCA maintains that the statue is inapplicable because

the cross-claims are premised on design defects, whereas plaintiff's amended complaint

seeks to hold Erickson liable for construction defects.  This argument misses the mark.

The relevant comparison is between the injuries *plaintiff* alleges against Erickson and

CCA in its amended complaint.

That comparison reveals no appreciable difference between the type of injuries

allegedly inflicted by these parties on plaintiff.  The amended complaint charges

Erickson with failing to build the home "in a good and workmanlike manner" and in

accordance with "all applicable building codes and standards, design plans and

specifications, and in accordance with the practices and standards in the trade or

industry." (**Am. Compl.** ¶ 82 at 16.)  Similarly, plaintiff claims CCA failed to ensure the

residence was built "in a good and workmanlike manner" and in accordance with "all

applicable building codes and standards, design plans and specifications, and in

accordance with the practices and standards in the trade or industry." (*Id.* ¶ 86 at 17.)

Any difference between "building" the home and "ensuring that it would be designed and

built" is so ethereal as to be incognizable.  Erickson thus has stated a plausible claim for

contribution against CCA, and the motion to dismiss that claim must be denied.

### IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Cross-Claim Defendant Charles L. Cunniffe's Motion To Dismiss
Cross-Claims** [#119], filed October 20, 2011, is **GRANTED IN PART** and **DENIED IN**

**PART** as follows:

a.  That the motion is **GRANTED** with respect to the following cross-claims asserted in the **Cross-Claims and Third-Party Claims** [#106], filed September 30, 2011, as against cross-claim defendant/third-party defendant Charles C. Cunniffe, individually, d/b/a Charles Cuniffee & Assoc. Architects, only:

(1) First Claim for Relief (Negligence);

(2) Third Claim for Relief (Breach of Contract); and

(3)  Fourth Claim for Relief (Indemnification); and

b.  That the motion is in all other respects **DENIED**; and

2.  That the cross-claims enumerated in paragraph 1.a. above are **DISMISSED WITH PREJUDICE**; and

3.  That at the time judgment enters, judgment **SHALL ENTER** on behalf of cross-claim defendant/third-party defendant, Charles L. Cunniffe, individually, d/b/a Charles Cunniffe & Assoc. Architects, against cross-claim plaintiffs/third-party plaintiffs, Rickie Dean Erickson, individually, and Erickson Construction, Inc., a Colorado corporation, as to the cross-claims enumerated in paragraph 1.a. above; provided, that the judgment as to these claims shall be with prejudice.

Dated August 3, 2012, at Denver, Colorado.

BY THE COURT:

Bob Blackburn

Robert E. Blackburn
United States District Judge